IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HERBERT J. NAMOHALA, | ) | CIV. NO.  11-00786 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER SIMULTANEOUSLY |
| | ) | (1) DISMISSING ACTION AS A |
| vs. | ) | SANCTION AGAINST PLAINTIFF; |
| | ) | AND (2) GRANTING MOTIONS FOR |
| STUART MAEDA, et al., | ) | SUMMARY JUDGMENT BROUGHT |
| | ) | BY (A) DEFENDANTS RANDALL |
| Defendants. | ) | MEDEIROS, REED MAHUNA, |
| | ) | WENDELL CARTER, HARRY |
| | ) | KOBOJIRI, AND COUNTY OF |
| | ) | HAWAII, DOC. NO. 136, AND |
| | ) | (B) DEFENDANTS SATORU |
| | ) | STEWART MAEDA AND MITSUYO |
| | ) | MAEDA, DOC. NO. 138; AND (3) |
| | ) | DENYING WITHOUT PREJUDICE |
| | ) | DEFENDANTS SATORU STEWART |
| | ) | MAEDA AND MITSUYO MAEDA'S |
| | ) | REQUEST FOR ATTORNEYS' FEES, |
| _____ | ) | DOC. NO. 138 |

**ORDER SIMULTANEOUSLY (1) DISMISSING ACTION AS A SANCTION AGAINST PLAINTIFF; AND (2) GRANTING MOTIONS FOR SUMMARY JUDGMENT BROUGHT BY (A) DEFENDANTS RANDALL MEDEIROS, REED MAHUNA, WENDELL CARTER, HARRY KOBOJIRI, AND COUNTY OF HAWAII, DOC. NO. 136, AND (B) DEFENDANTS SATORU STEWART MAEDA AND MITSUYO MAEDA, DOC. NO. 138; AND (3) DENYING WITHOUT PREJUDICE DEFENDANTS SATORU STEWART MAEDA AND MITSUYO MAEDA'S REQUEST FOR ATTORNEYS' FEES, DOC. NO. 138**

# I. **INTRODUCTION**

Plaintiff Herbert J. Namohala ("Plaintiff"), proceeding pro se, asserts that various Defendants violated his constitutional rights by engaging in a conspiracy to wrongfully accuse and ultimately charge Plaintiff with felony second degree theft. After various motions to dismiss, Plaintiff's claims remain against Stuart Maeda and Mitsuya Maeda (the "Maedas"), Hawaii County (incorrectly named as the Hawaii Police Department) (the "County"), Hawaii County Police Department ("HCPD") Officers Randall Medeiros, Reed Mahuna, and Wendell Carter (collectively, "Officer Defendants"), and HCPD Chief Harry Kubojiri (collectively, "Defendants").[1]

Currently before the court are (1) Officer Defendants, Kobojiri, and the County's (collectively, "County Defendants") Motion for Summary Judgment, Doc. No. 136, and (2) the Maedas' Motion for Summary Judgment. Doc. No. 138. The Motions argue that Plaintiff failed to raise a genuine issue of material fact in support of any of his claims, and in any event summary judgment should issue as a sanction for Plaintiff's numerous violations of the Local Rules and failure to

---

[1] The Complaint also named as Defendants the State of Hawaii; the Office of Consumer Protection ("OCP"), Department of Commerce and Consumer Affairs (the "DCCA"); DCCA employee Lisa P. Tong ("Tong"); and Hawaii Child Protective Services (the "CPS"). On March 23, 2012, the court dismissed Plaintiff's claims against the State of Hawaii, CPS, OCP, and DCCA. Doc. No. 36. On May 22, 2013, the court granted Tong's Motion to Dismiss. Doc. No. 125.

prosecute.  In opposition, Plaintiff requested and was granted a Rule 56(d) request, after which time he failed to file any Opposition.  Based on the following, the court GRANTS the Motions for Summary Judgment as both a sanction and for failure to raise a genuine issue of material fact.

## II. __BACKGROUND__

A.     **Factual Background**

1.     *Plaintiff's Allegations*

The Complaint asserts that Defendants engaged in a conspiracy to wrongfully accuse and ultimately charge Plaintiff with felony second degree theft stemming from an agreement Plaintiff had to replace Mitsuyo Maeda's ("Mitsuyo") window screens for $3,900.  *See* Doc. No. 94, Second Amended Complaint ("SAC").  As alleged in the SAC, Stewart Maeda ("Stewart"), Mitsuyo's son, ordered Plaintiff to stop replacing the screens and demanded a refund after Plaintiff had almost completed the work.  *Id.* ¶¶ 9-10.  Stewart threatened Plaintiff that Stewart, as a Hawaii state employee, would file a complaint with the HCPD and publicize Plaintiff's actions with the media.  *Id.* ¶ 10.

On June 22, 2010, Plaintiff was interviewed by Detective Carter, who planned on arresting Plaintiff regardless of what the evidence showed and as part

of a conspiracy with Stewart and the HCPD.  *Id.* ¶ 11.  Plaintiff was arrested (with a total lack of evidence supporting the charges), and he was not given any charging papers and not given his day in court.  *Id.* ¶ 12.  The SAC further asserts that Plaintiff "has suffered character defamation, slander, and libel due to the illegal actions" of Defendants, including the release of libelous information regarding his charges to the media.  *Id.* ¶ 18.

### 2.     *The Facts Presented on the Motions for Summary Judgment*

Despite the allegations of the SAC, Plaintiff filed no Opposition to the Motions for Summary Judgment and otherwise presented no evidence.  Pursuant to Local Rule 56.1(g), the court deems admitted the material facts set forth in the Maedas' and County Defendants' Concise Statements of Facts ("CSF").  As such, the court outlines the following facts, which suggests a very different version of events than as alleged in the SAC:

Plaintiff sold Kirby vacuums door to door before opening his own company Herb's Cleaning Services, LLC in 2008.  Doc. No. 142, County Defs.' CSF ¶ 1.  While doing sales for Kirby, Plaintiff would solicit business for his yard and home cleaning services.  *Id.* ¶ 2.  Most of Plaintiff's customers were senior citizens.  *Id.* ¶ 3.

4

Mitsuyo purchased a three-year cleaning contract from Plaintiff in 2007 for $5,400 which included window cleaning. *Id.* ¶ 4. On March 5, 2009, Plaintiff went to Mitsuyo's house and told her that she should replace all the screens on her house. *Id.* ¶ 5. Mitsuyo's screens were in good condition and did not need to be replaced, and she only wanted her screens cleaned. *Id.* ¶ 6. Although she tried to leave and told Plaintiff she wanted time to think about it, Plaintiff was persistent and would not take no for an answer. *Id.* Mitsuyo felt pressured to give Plaintiff her credit card, and although she signed the receipt, she was not sure if it showed the price before she signed it. *Id.* ¶ 7. Mitsuyo felt that Plaintiff took advantage of her, and she later found out that her credit card was charged $3,900. *Id.* ¶ 8.

On March 6, 2009, Plaintiff's subcontractors began the work, but before they could finish Stewart told them to stop. *Id.* ¶ 10. Stewart, who learned that a roll of screen costs $122 and labor typically costs $200, spoke to Plaintiff on March 9, 2009 and told him to either refund Mitsuyo's money or adjust the price. *Id.* ¶ 11. Plaintiff refused both options, even after both Stewart and Mitsuyo tried to cancel the contract the next day. *Id.* ¶ 12.

On March 18, 2009, Stewart and Mitsuyo reported the incident to the HCPD, and Stewart also reported it to the Department of Commerce and Consumer

5

Affairs.  *Id.* ¶¶ 16, 17.  In response, the HCPD was instructed by the Prosecutor's

Office to open a case for felony theft in the second degree.  *Id.* ¶ 18.

On June 22, 2010, Detective Carter interviewed witnesses and

Plaintiff about Mitsuyo's case.  *Id.* ¶ 19.  Plaintiff admitted to Detective Carter that

he charged Mitsuyo over $2,000 more than what other contractors would charge

for the same job.  *Id.* ¶ 20.  Detective Carter also discovered that Plaintiff charged

Mitsuyo $366.66 for work that was not completed, and Plaintiff further admitted

that he had received complaints from others who accused him of taking advantage

of senior citizens who had purchased his services.  *Id.* ¶¶ 21-22.  Deputy

Prosecutor Mitch Roth advised Detective Carter to arrest Plaintiff for Felony Theft

in the Second Degree.  *Id.* ¶ 23.  After his arrest, Plaintiff was released from police

custody and his felony theft case was referred to the Prosecutor's Office for a

charging decision.  *Id.* ¶ 25.

Plaintiff was also a suspect in a July 2009 felony theft case reported

by an eighty-seven year old woman, Mary Medeiros ("Mary").  *Id.* ¶ 26. Because

the facts of Mary's case were similar to Mitsuyo's case, Officer Mahuna drafted a

media release about Plaintiff to determine if the public had more information about

these cases.  The information in the media release was accurate and complied with

HCPD's policies regarding the release of information to the news media.  *Id.* ¶ 28.

6

Officer Medeiros approved the media release, which was posted on HCPD's website after Plaintiff's arrest. *Id.* ¶ 29. The media release led to several calls from people between the ages of seventy-seventy to eighty-eight years old, all complaining they paid Plaintiff a lot of money for home cleaning or repair work that was not completed. *Id.* ¶ 30.

Detective Carter ultimately opened seven new felony theft cases against Plaintiff and attempted to interview Plaintiff about these cases, but Plaintiff refused. *Id.* ¶ 31. All of Plaintiff's theft cases were referred to the Prosecutor's Office for a charging decision. *Id.*

## B.  Plaintiff's Failure to Follow Rules of Court

As the court has outlined in several previous Orders, over the course of this action, Plaintiff has repeatedly failed to meet his litigation obligations, and his behavior has only escalated over time.

For example, in response to two initial rounds of Motions to Dismiss, Plaintiff failed to timely file Oppositions and instead mailed in his Oppositions days after the deadlines without leave of court. *See, e.g.*, Doc. Nos. 35, 56. Then, in response to Defendant Lisa Tong's Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff filed no Opposition whatsoever prior to the hearing. He instead asserted (quite incredibly) that his Opposition, allegedly sent to three

separate sets of counsel and the court, must have gotten lost in the mail.  *See* Doc.

No. 78.  As a result, the court issued a November 19, 2012 Order to Show Cause

("November 19, 2012 OSC"), requiring Plaintiff to explain how he will comply

with his litigation obligations, and warning Plaintiff that failure to respond would

result in dismissal of his claims as to Tong.  *Id.*  Plaintiff ultimately responded to

the November 19, 2012 OSC, and on November 30, 2012, the court granted Tong's

Motion to Dismiss (on the merits and not as a saction), with leave for Plaintiff to

amend.  Doc. No. 88.

    After Plaintiff filed his SAC, Tong filed a Motion to Dismiss on

January 18, 2013.  *See* Doc. No. 97.  Plaintiff failed to file an Opposition, and

failed to appear at the April 15, 2013 hearing, despite being notified of both these

dates -- the court outlined these dates in a January 22, 2013 Entering Order, which

was served on Plaintiff via first class mail at his address of record.  As a result, the

court issued its April 15, 2013 Order Requiring Plaintiff to Show Cause Why

Action Should Not Be Dismissed for Failure to Prosecute ("April 15, 2013 OSC").

    In response, Plaintiff asserted, among other things, that (1) he wished

to proceed in this action; and (2) he was not notified of his Opposition deadline or

the April 15, 2013 hearing on the Motion to Dismiss, despite the court having his

correct address.  In light of Plaintiff's assertions, the court vacated the April 15, 2013 OSC, but expressly warned Plaintiff:

> [T]hese recent events should serve as an express, *final* warning to Plaintiff that he cannot continue to litigate this action in this fashion -- Plaintiff is expected to timely respond to Motions filed in this action, appear at hearings whether in person or telephonically (if permission to appear telephonically is granted in advance), and participate in discovery.  If Plaintiff continues to flout his obligations in this action, this action will be dismissed for failure to prosecute.

Doc. No. 121, at 4.  The court further granted Plaintiff leave to file an Opposition to Tong's Motion to Dismiss the SAC by May 6, 2013.  Doc. No. 120.  Plaintiff (again) failed to file any Opposition, and as a result, the court granted Tong's Motion to Dismiss both as a sanction for Plaintiff's failure to comply with the Rules of this court and on the merits.  *See* Doc. No. 125.

Plaintiff has also failed to comply with his discovery obligations.  On August 23, 2012, Magistrate Judge Kevin S.C. Chang ordered Plaintiff to supplement his discovery by providing complete, sworn or notarized answers to interrogatory requests by September 7, 2012, and to respond to document requests by October 25, 2012.  Doc. No. 63.  After Plaintiff failed to comply with the August 23, 2012 Order, Magistrate Judge Chang ordered that Plaintiff provide responses to these discovery requests and further ordered Plaintiff to pay County

Defendants' attorneys' fees and costs.  Doc. No. 113.  The August 23, 2012 Order provided that "[i]f Plaintiff fails to comply with this order it may result in additional sanctions, which may include dismissal of this action."  *Id.*

Even after this second order, Plaintiff failed to supplement his discovery responses, and on July 1, 2013, Magistrate Judge Chang issued a second order requiring Plaintiff to fully respond to discovery requests and awarding County Defendants attorneys' fees and costs.  Doc. No. 130.  Despite these multiple orders, Plaintiff has responded to only two of twenty-five interrogatories, *see* Doc. No. 160, and during his deposition he threw out notes requested to be produced by counsel and refused to answer several questions.  *See* Doc. No. 137-1, Kimberly Angay Decl. ¶ 19; Doc. No. 137-3, County Defs.' Ex. B at 107, 122, 229.  Plaintiff has also failed to make any payment of his sanctions to the County. *See* Doc. No. 161.

Finally, as to the present Motions, County Defendants and the Maedas filed their Motions for Summary Judgment on October 9, 2013.  Doc. No. 136, 138.  As outlined in the court's October 10, 2013 Entering Order, Plaintiff's Oppositions to these Motions were due by December 9, 2013, Replies were due by December 23, 2013, and a hearing was scheduled for January 13, 2014.  Doc. No. 140.  On December 9, 2013, Plaintiff filed his Opposition to both Motions for

10

Summary Judgment, arguing that he has not yet received discovery from Defendants, and "that granting Defendant's motion[s] for summary judgment would not be appropriate without giving Plaintiff the opportunity to receive Defendants['] responses to Plaintiff's discovery request."  Doc. No. 145, Pl.'s Opp'n at 1.  In a December 9, 2013 Order, the court explained that Plaintiff's Opposition did not comply with Rule 56(d) requests for a continuance, and granted him until December 23, 2013 to file a renewed Rule 56(d) request.  Doc. No. 146.

Plaintiff filed a renewed Rule 56(d) request, and at the January 13, 2014 hearing, the court granted the request, allowing Plaintiff to file Oppositions to the Motions for Summary Judgment by January 27, 2014.  Doc. No. 155.  Given that discovery had just ended, Plaintiff agreed that this date would provide him sufficient time to file an Opposition.  Following a similar pattern, Plaintiff failed to file any Opposition.

### III. <u>ANALYSIS</u>

Based on the following, the court finds that (1) this action should be dismissed as a sanction against Plaintiff for his continued failure to follow the court's rules and deadlines; and (2) summary judgment should be granted on all claims for Plaintiff's failure to raise a genuine issue of material fact.

### A.     Dismissal as a Sanction

Federal Rule of Civil Procedure 41(b) allows the court to dismiss a claim for failure "to prosecute or to comply with [the federal] rules or a court order," and such dismissal may be with or without prejudice.  *See also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).  The Local Rules also authorize the imposition of sanctions, including, if appropriate, dismissal, when a party fails to comply with any of its provisions.  *See* Local Rule 11.1 ("Failure of counsel or of a party to comply with any provision of these rules is a ground for imposition of sanctions, including a fine, dismissal, or other appropriate sanction.").  Indeed, "[d]istrict courts retain broad discretion to control their dockets and '[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal.'"  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)).

To determine whether dismissal is warranted, the court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on

their merits.  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

Consideration of these factors weighs in favor of dismissal of Plaintiff's claims against County Defendants and the Maedas.  First, the public's interest in expeditious resolution of litigation strongly favors dismissal -- Plaintiff has repeatedly failed to participate in court proceedings, failed to respond to discovery (and indeed wilfully refused by provide discovery by refusing to answer questions and destroying evidence during his deposition), and delayed adjudication of his claims by asking for numerous extensions.  Second, Plaintiff's refusal to participate interferes with the court's ability to manage its docket -- this court has given Plaintiff multiple opportunities to participate in this action, and each time Plaintiff has missed deadlines and provided the court hollow excuses.  Plaintiff's dilatory tactics put in jeopardy the efficient adjudication of this action.  Third, Plaintiff's actions have impaired Defendants' ability to proceed to trial -- both the court and the parties have given Plaintiff multiple opportunities to litigate this action, yet there are constant delays on Plaintiff's part and he has produced no evidence in support of his claims.[2]  Fourth, given all these circumstances --

---

[2]  Plaintiff answered only two interrogatories, providing his name, address, telephone number, and where he graduated from high school.  *See* Doc. No. 160.

including Plaintiff's numerous failures to meet court deadlines, produce discovery, and pay sanctions, as well as the court's explicit warnings to Plaintiff -- the court finds that less drastic alternatives are not possible.  Finally, although public policy favors disposition of cases on their merits, such consideration does not outweigh the other factors.

The court therefore finds that the appropriate sanction is dismissal of Plaintiff's claims against County Defendants and the Maedas.

**B.     Summary Judgment**

Even if the court did not dismiss the claims as a sanction against Plaintiff, the court finds that Plaintiff has failed to establish a genuine issue as to any of his claims.

*1.     Summary Judgment Standard*

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

15

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

### 2.    *Application*

Construed liberally,[3] the SAC appears to assert claims for violation of Plaintiff's First, Fourth, and Fifth Amendment, equal protection, and due process rights, as well as state law claims for defamation, slander, and libel.  *See* Doc. No. 94, SAC ¶¶ 18-20.  For numerous reasons, Plaintiff has failed to establish a genuine issue of material fact in support of any of these claims.

As an initial matter, Plaintiff has failed to establish a basis for his constitutional claims against the Maedas, who are private citizens and not government actors.  Although Plaintiff asserts that Stewart was a state employee, the undisputed evidence establishes that he was not acting in the capacity of a state employee -- he had not been an employee for over two years at the time of the events alleged in the SAC.  Doc. No. 139, Maeda CSF ¶ 2.  And although private individuals may be liable for conspiring with government actors, *see Kimes v.*

---

[3]    Plaintiff is appearing *pro se*; consequently, this court will liberally construe his pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).)).

*Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996), there is no evidence suggesting a conspiracy between the Maedas and any of the other Defendants.  Rather, the undisputed evidence establishes that Stewart and Mitsuyo merely reported Plaintiff's conduct to the HCPD and had no further involvement in the investigation, or the decisions to arrest Plaintiff and issue a press release.  *See* Doc. No. 139, Maeda CSF ¶¶ 3-4.  Thus, summary judgment is appropriate for Plaintiff's constitutional claims against the Maedas.

As to the constitutional claims against County Defendants, Plaintiff's First Amendment, Fifth Amendment, and equal protection claims fail as a matter of law.  The court cannot discern any basis for a First Amendment claim, and during his deposition Plaintiff asserted that this claim was based on the fact that he was not given the opportunity to present evidence establishing his innocence when he was interviewed by Detective Carter.  *See* Doc. No. 137-3, County Defs.' Ex. B at 174-75.  But Plaintiff has presented no evidence supporting that Detective Carter prevented him from providing his version of events or otherwise prevented him from engaging in protected speech, which is a necessary element of any First Amendment claim.  As to Plaintiff's Fifth Amendment claim, it applies "only to actions of the federal government -- not to those of state or local government," *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), and therefore does not

apply in this action.  Finally, an equal protection claim applies where a plaintiff is treated differently form others who are similarly situated, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), yet there is no evidence supporting such finding and Plaintiff even admitted during his deposition that he has no basis to believe that he was treated differently than others (whether as a member of a class or as a class of one).  *See* Doc. No. 137-3, County Defs.' Ex. B at 195.

Plaintiff's Fourth Amendment claim appears to be based on his arrest. *See also* Doc. No. 137-3, County Defs.' Ex. B at 225 (stating that the only thing the HCPD did to violate his rights was arrest him).  An arrest is lawful under the Fourth Amendment when it is supported by probable cause.  *See Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) ("That a police officer may arrest a suspect only if he has probable cause to believe a crime has been committed is a bedrock Fourth Amendment precept.").  "Probable cause exists when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation marks omitted).

The undisputed evidence establishes probable cause to arrest Plaintiff for felony theft in the second degree, which involves theft of property or services exceeding $300 and may be committed by using deception.  *See* Hawaii Revised Statutes ("HRS") § 708-831 (defining theft in the second degree); § 780-830(2) (explaining that "theft" includes use of deception to deprive another of property). Plaintiff charged Mitsuyo $3,900 to replace her screens, and he admitted to Detective Carter that others would charge $1,200 to $1,900 for these same services.  *See* Doc. No. 142, County Defs.' CSF ¶ 20.  Plaintiff further charged Mitsuyo for four screen doors, even though her home did not include any screen doors.  *Id.* ¶ 21.  Finally, his $3,900 fee included cleaning the window sills, but he was already obligated under another contract to provide this service.  *See id.* ¶ 4. These facts would lead a prudent person to conclude that there was a fair probability that Plaintiff committed this crime.

As to Plaintiff's due process claim, the SAC asserts that Plaintiff was never provided a copy of any criminal complaint against him, the charges were not read or explained to him, and he was "never given his day in court on these false charges."  Doc. No. 94, SAC ¶¶ 11-12.  These allegations are not supported by evidence.  Rather, during Detective Carter's interview with Plaintiff, Detective Carter (1) provided Plaintiff his *Miranda* rights; (2) explained that Mitsuyo and

19

Stewart had made a complaint and that Detective Carter was investigating Plaintiff

for felony theft investigation; (3) discussed the facts with Plaintiff; and

(4) concluded by telling Plaintiff that he was under arrest for theft in the second

degree and that the prosecutor's office would have forty-eight hours to decide

whether to charge him. *See* Doc. No. 137-2, County Defs.' Ex. A. There is no

evidence on the record that he was ultimately charged. These facts provide no

basis for a due process violation.

Finally, Plaintiff's state law claims for defamation, slander, and libel

require a false statement. *See, e.g.*, *Gold v. Harrison*, 88 Haw. 94, 100, 962 P.2d

353, 359 (1998) (holding that defamation requires a false statement); *Rodriguez v.

Nishiki*, 65 Haw. 430, 437, 653 P.2d 1145, 1150 (1982) (suggesting that both libel

and slander include a false statement). Yet the media release was not false -- it

simply stated the fact that Plaintiff was arrested "for second-degree theft in

connection with an alleged scheme to deceive an elderly Hilo woman out of

thousands of dollars," and requested that individuals with information to contact

the HCPD. *See* Doc. No. 137-7, County Defs.' Ex. F. Plaintiff's state law claims

therefore fail.[4]

---

[4] The Maedas further argue that summary judgment should be granted on any claims for harassment or civil conspiracy. *See* Doc. No. 138, Maeda Mot. at 12-14. To the extent Plaintiff asserts such claims, the court agrees -- there is no evidence of any conspiracy between Defendants or harassment of Plaintiff. *See* HRS § 604-10.5 (describing that harassment involves

In sum, Plaintiff has failed to raise a genuine issue of material fact in support of any of his claims.  The court therefore GRANTS County Defendants' and the Maedas' Motions for Summary Judgment on all claims.

## C.    Request for Attorneys' Fees and Costs

The Maedas argue that the court should award them their attorneys' fees pursuant to 42 U.S.C. § 1988(b) because this action was frivolous.  *See* Doc. No. 138, Maeda Mot. at 16-18.  The court denies this request without prejudice as premature and for failure to comply with the Local Rules.  *See* Local Rule 54.3.

## IV.  <u>CONCLUSION</u>

Based on the above, the court simultaneously (1) DISMISSES this action as a sanction for Plaintiff's continued failure to follow the court's rules and deadlines; and (2) GRANTS Defendants' Motions for Summary Judgment. Because no claims remain, the court directs the Clerk of Court to close the case file.  The court notifies Plaintiff that dismissal of this action does not excuse his non-payment of County Defendants' fees and costs as awarded in March 11, 2013

///

///

///

---

conduct that "serves no legitimate purpose").

21

and June 28, 2013 Orders.  *See* Doc. Nos. 113, 130.  To be clear, Plaintiff is still

obligated to pay these amounts.

    IT IS SO ORDERED.

    DATED:  Honolulu, Hawaii, February 11, 2014.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Namohala v. Maeda et al.*, Civ. No. 11-00786 JMS/KSC; Order Simultaneously (1) Dismissing Action as a Sanction Against Plaintiff; and (2) Granting Motions for Summary Judgment Brought by (A) Defendants Randall Medeiros, Reed Mahuna, Wendell Carter, Harry Kobojiri, and County of Hawaii, Doc. No. 136, and (B) Defendants Satoru Stewart Maeda and Mitsuyo Maeda, Doc. No. 138; and (3) Denying Without Prejudice Defendants Satoru Stewart Maeda and Mitsuyo Maeda's Request for Attorneys' Fees, Doc. No. 138